UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

PHILLIP MORRIS USA INC.

                              Plaintiff,       CV-03-1161 (CPS)

     - against -                               MEMORANDUM OPINION
                                               AND ORDER

MARLBORO EXPRESS, TOBACCO TRADERS
AND TRUST, TIMOTHY FARNHAM,
individually and doing business
as Tobacco Traders and Trust and
Marlboroexpress.com, MARY KIM
JAMIESON, individually and doing
business as Tobacco Traders and
Trust and Marlboroexpress.com,
NATIVE EXPRESS, DON DOCTOR,
individually and doing business
as Marlboroexpress.com and
Nativeexpress.com, DENNIS KENNEDY,
individually and doing business
and Double D Smoke Shop, SOVEREIGNTY
VENTURES, INC., DON DELAND,
individually and doing business as
Sovereignty Ventures, Inc., IROQOUIS
TOBACCO COMPANY, SCOTT SNYDER,
individually and doing business as
Iroquois Tobacco Company, SIMON
MOSHEL; an individual; MICHAEL MOSHEL,
an individual, ROBERT BERARDELLI, an
individual, and Does One Through
Ten Inclusive

                              Defendants.

----------------------------------------X

SIFTON, Senior Judge.


        Plaintiff Philip Morris USA, Inc. ("Philip Morris")

brings this trademark action seeking damages and injunctive

relief against defendants Marboro Express, Tobacco Traders and

Trust, Timothy Farnham, individually and doing business as "Tobacco Traders and Trust" and "Marlboroexpress.com," Don Doctor, individually and doing business as "Marlboroexpress.com" and "Nativeexpress.com," Dennis Kennedy, individually and doing business as "Double D Smoke Shop," Don Deland, individually and doing business as "Sovereignty Ventures, Inc.," Iroqois Tobacco Company, Scott Snyder, individually and doing business as "Iroqois Tobacco Company," and Robert Berardelli.[1] Plaintiff's claims arise out of defendants' sale of counterfeit Marlboro® brand cigarettes. Specifically, plaintiff alleges the following claims against the defendants: (1) infringement of plaintiff's registered trademarks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Claims 1-4); (2) importation of counterfeit goods bearing an infringing trademark in violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124 (Claims 5-6); (3) false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Claims 7-8); (4) trademark dilution in violation of the Federal Trademark Dilution Act, 15 U.S.C. §§ 1125(c) and 1127 (Claims 9-10); (5) "cybersquatting" in

---

[1] Plaintiff's complaint also named as defendants Simon Moshel, Michael Moshel and Mary Kim Jamieson. Plaintiff has entered a Consent Judgment with defendants Simon and Michael Moshel, which was "so ordered" by this Court on February 2, 2005. Pursuant to the Consent Judgment, defendants Simon and Michael Moshel agreed to pay plaintiff $150,000 and were permanently enjoined from selling counterfeit or illegally imported Marlboro cigarettes. (*See* Consent Judgment at 2). Plaintiff also filed a notice of voluntary dismissal of the claims asserted against defendant Mary Kim Jamieson without prejudice, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure on July 22, 2005.

violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d)(Claim 11); (6) unfair competition in violation of the common law of New York (Claim 12); (7) trademark infringement in violation of the common law of New York (Claim 13); and (8) trademark dilution in violation of New York General Business Law § 360-1 *et seq.* (Claim 14).

Presently before the court are the following motions: (1) plaintiff's motion for partial summary judgment against defendant Snyder on Claims 1,2, 5, and 7 alleged in the complaint, pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."); and (2) plaintiff's motion for entry of default judgment and order granting damages and injunctive relief against defendants Berardelli, Deland, Farnham, Kennedy, and Doctor (collectively "Default Defendants"), pursuant to Fed. R. Civ. P. 55(b). The defendants have not responded to plaintiff's motions.[2] For the reasons set forth below, the motions are granted.

## BACKGROUND

The following facts are drawn from the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits in connection with this motion. The facts are undisputed unless otherwise noted.

---

[2] The defendants against whom these motions are brought appear to be proceeding *pro se.*

Plaintiff Phillip Morris is a corporation organized under the laws of Virginia with its principal place of business in New York. For several decades, Phillip Morris has manufactured and sold tobacco products under the Marlboro® brand (Pl. 56.1 Statement ¶ 1). Among the distinctive features of the Marlboro® brand is its pack design, which features the Marlboro Roof Design Label® Mark (a pentagonal figure with a horizontal top and two vertical sides with two upwardly and inwardly sloping diagonals). Phillip Morris is the registered owner of the "Marlboro Marks" on the Principal Register of the United States Patent and Trademark Office ("USPTO"). The "Marlboro Marks" include the Roof Design Label® Mark, Marlboro®, Marlboro Lights®, Marlboro Menthol®, Marlboro Lights Menthol®, Marlboro Ultra Lights®. (*See* Registration Certificates, Johnson Decl. Ex. A). Phillip Morris has invested substantial time, effort, and money to advertise and promote the Marlboro Marks, and as a result, they are widely recognized trademarks for which significant "good will" has developed.

Between August 2000 and February 2003, defendants Snyder, Deland, Farnham, and Berardelli, in conjunction with others, imported approximately 200,000 cartons of counterfeit Marlboro® and Marlboro Lights® cigarettes from China. (Pl. 56.1 ¶ 3; Johnson Dec. Ex. B). These cartons were imported in at least five separate shipments, and were monitored by the United States

Customs Service after arrival in the United States from China. (Pl. 56.1 ¶¶ 3-4; Johnson Dec. Ex. B). Defendants sold counterfeit Marlboro brand cigarettes at retail stores, including the "Double D Smoke Shop," located on the Seneca Indian Cattaraugus reservation and the "Iroqious Tobacco Company," located in Irving, New York, and through various Internet websites, including "Marlboroexpress.com" and "Smokeheap.com." (Pl. 56.1 ¶ 5; Johnson Dec. Ex. C). Defendants purchased counterfeit cigarettes at prices between $2.00 and $2.20 per carton and sold them at retail prices between $19.00 and $29.99 per carton. (Pl. 56.1 ¶ 6; Johnson Dec. Ex. H).

On February 14, 2003, the United States Customs Service filed a criminal complaint in the United States District Court for the Eastern District of New York against defendants Snyder, Deland, Farnham, Berardelli and others[3] for conspiracy to smuggle and traffic in counterfeit goods, in violation of 18 U.S.C. §§ 545 and 2320.[4] (*See* Criminal Complaint, *United States v. Moshel,*

---

[3] The criminal complaint also named Simon and Michael Moshel as defendants. (Johnson Dec. Ex. B at 1).

[4] 18 U.S.C. § 545 provides in relevant part that:

> Whoever knowingly and wilfully...smuggles or clandestinely introduces...into the United States any merchandise which should have been invoiced....or fraudulently or knowingly imports or brings into the United States any merchandise contrary to law...[s]hall be fined under this title or imprisoned...

18 U.S.C § 2320 provides in relevant part that:

> Whoever intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection

*et. al.,* 1:03-m-276 (E.D.N.Y.), Johnson Decl. Ex. B).  On March 20, 2003, defendants Snyder, Deland, Farnham, Berardelli were indicted in the United States District Court for the Eastern District of New York on three counts of trafficking and conspiring to traffic counterfeit goods in violation of 18 U.S.C. §§ 545 and 2320. (*See* Indictment, Johnson Decl. Ex. C).  On September 30, 2003, defendant Farnham pled guilty before Magistrate Judge Cheryl Pollack to Count One of the indictment which accused them of knowingly and intentionally conspiring to traffic in counterfeit cigarettes.  On October 1, 2003, defendants Snyder and Deland also pled guilty before Judge Raymond Dearie to Count One of the indictment. (*See* Johnson Decl. Ex. D; Barkin Decl. Ex. 7-8; Pl. 56.1 Statement ¶ 29).[5] Defendant Berardelli pled guilty to Count Two of the Indictment which accused him of knowingly and intentionally trafficking in counterfeit goods in violation of 18 U.S.C. § 2320.

Plaintiff commenced this action by filing a complaint and summons against the defendants on March 10, 2003 (the "Complaint").  Between March 2003 and June 2003, plaintiff served

---

with such good or services shall be fined...or imprisoned...

[5] Defendants Snyder, Deland and Farnham were also charged in the United States District Court for the Western District of Texas with smuggling and trafficking counterfeit cigarettes in violation of 18 U.S.C §§ 371, 2342(a) and 2320(a).  Defendant Synder pled guilty and was sentenced to 27 months imprisonment in December 2003.  He was also ordered to pay $861,260 in restitution for unpaid cigarette taxes.  Phillip Morris is not entitled to any part of that restitution award. (*See* Johnson Decl. Ex. G.).  Defendants Deland and Farnham also pled guilty, and were sentenced to 24 and 18 months imprisonment, respectively. (*See* Barkin Decl. Ex. 11-12).

process upon each of the defendants. To date, defendants Berardelli, Deland, Farnham, Kennedy, and Doctor[6] have not filed an answer or otherwise responded to the Complaint. On May 11, 2005, the Clerk of this Court issued a Notation of Default pursuant to Fed. R. Civ. P. 55(a) against defendants Farnham, Doctor, Kennedy and Deland.[7]

## DISCUSSION

### Jurisdiction

The Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338, which confers jurisdiction over actions involving violations of patents and trademarks, 28 U.S.C. § 1331, which authorizes jurisdiction over civil actions arising under federal law, and principles of pendent jurisdiction over the state law claims.

### Motion for Partial Summary Judgment

#### Summary Judgment Standard

A motion for summary judgment may be granted only where "the pleadings, depositions, answers to interrogatories, and

---

[6] Although defendants Kennedy and Doctor were not named in the related criminal action, they are alleged in plaintiff's complaint to be co-owners or operators of some of the outlets through which the counterfeit cigarettes were sold, including "Double D Smoke Shop," "Marlboroexpress.com" and "Nativeexpress.com."

[7] Defendant Berardelli is not listed on the Clerk's Notation of Default. However, this appears to be an oversight, as plaintiff provided the Clerk of Court with a copy of the summons and complaint served by personal service on defendant Berardelli on March 25, 2003. (*See* Barkin Decl., Ex. 14 ¶¶7-8; Ex. 15). The default is hereby noted.

admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp v. Catrett,* 477 U.S. 317 (1986). A motion for summary judgment may be defeated by the non-moving party if that party produces sufficient specific facts to establish that there is a material issue of fact for trial. *See Montana v. First Federal Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir.1989). The role of the court on such a motion is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. United States Fire Ins. Co.,* 804 F.2d 6, 11 (2d Cir.1986). The "court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." *L.B. Foster Co. V. American Piles, Inc.,* 138 F.3d 81, 87 (2d Cir.1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

<u>Defendant Snyder's Failure to Respond</u>

Local Rule 56.1 of the Eastern and Southern Districts of New York requires that all summary judgment motions be accompanied by a "short or concise statement of material facts as to which the moving party contends there is no genuine issue to be tried." Local Rule 56.1(a). The rule also requires that the party opposing summary judgment file a response setting forth the

material facts about which it contends there exists a triable issue. Because defendant Snyder has failed to file any response, all facts contained in plaintiff's Rule 56.1 statement are deemed admitted.[8] *See* Local Rule 56.1(b) and (d). However, defendant Snyder's failure to respond to plaintiff's motion does not mean that plaintiff automatically prevails. *See e.g. Addickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970). The moving party must "nevertheless offer facts supporting its Rule 56.1 Statement, and must satisfy the movant's Rule 56 burden." *Smith v. Principi,* 2004 WL 1857582, at *1, n.1 (S.D.N.Y. 2004); *see also Vermont Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co.,* 373 F.3d 241, 242 (2d Cir.2004)("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.").

### Lanham Act

Plaintiff seeks summary judgment against defendant Snyder on its First, Second, Fifth and Seventh Claims for relief, which allege (1) trademark infringement in violation of Section 32 of the Lanham Act, (2) importation of goods bearing an infringing trademark in violation of Section 42 of the Lanham

---

[8] Plaintiff filed a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" on May 23, 2005, informing defendant Snyder of the consequences of failing to respond to a summary judgment motion. *See Champion v. Artuz,* 76 F.3d 483, 486 (2d Cir.1996)(an "easily comprehensible notice" from the party moving for summary judgment provides sufficient notice to a *pro se* litigant).

Act, and (3) false designation of origin and trademark and dress infringement in violation of Section 43(a) of the Lanham Act.[9] *See* 15 U.S.C. §§ 1114(1), 1124, 1125(a).

*Sections 32 and 43(a)*

Section 32 of the Act prohibits the use in commerce, without consent, of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods," in a way that is likely to cause confusion with plaintiff's registered trademarks. 15 U.S.C. § 1114 (1)(a). Section 43(a) prohibits similar conduct, though it is not limited to registered trademarks, and deems liable for false designation of origin "[a]ny person who...uses in commerce any container for goods...name, symbol, device...or any false designation of origin ..which is likely to cause confusion." 15 U.S.C. § 1125(a); *see also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 155 (2d Cir.2002). Liability is established under both Sections 32 and 43(a) of the Lanham Act if a plaintiff can demonstrate (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are "likely to cause confusion." *Arrow Fastener v. Stanley Works,* 59 F.3d 384, 390 (2d Cir.1995).

---

[9] During oral argument before this Court on July 21, 2005, plaintiff's counsel stated that plaintiff intends to dismiss the remaining claims against defendant Snyder if plaintiff's motion for partial summary judgment on the claims which are the subject of this motion is granted.

In this case, plaintiff's certificates of registration
with the USPTO for the Marlboro Marks are "prima facie evidence
that the mark[s] [are] registered and valid (i.e. protectible),
that the registrant owns the mark[s], and that the registrant has
the exclusive right to use the mark[s] in commerce." *Lane
Capital Management, Inc. v. Lane Capital Management, Inc.,* 192
F.3d 337, 345 (2d Cir. 1999); 15 U.S.C. § 1067(b)("A certificate
of registration of a mark...shall be prima facie evidence of the
validity of the registered mark").  Thus, the plaintiff has
established that its Marlboro Marks are valid and entitled to
protection under the Act.

In considering the likelihood of confusion, district
courts generally apply eight nonexclusive factors, known as the
*Polaroid* factors:

> (1) the strength of the plaintiff's mark; (2) the similarity
> of plaintiff's and defendant's marks; (3) the competitive
> proximity of their products; (4) the likelihood that
> plaintiff will "bridge the gap" and offer a product like
> defendant's; (5) actual confusion between products; (6)
> defendant's good faith; (7) the quality of defendant's
> product as compared to plaintiff's; and (8) the
> sophistication of the purchasers.

*Streetwise Maps, Inc. v. VanDam, Inc.,* 159 F.3d 739, 742-43 (2d
Cir.1998)(citing *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d
492, 495 (2d Cir.1961).  However, in cases involving counterfeit
marks, "the Court need not undertake a factor-by-factor analysis
under *Polaroid* because counterfeits, by their very nature, cause
confusion."  *Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 286

F.Supp.2d 284, 287 (S.D.N.Y. 2003); *Phillip Morris USA Inc. v. Felizardo,* 2004 WL 1375277, at *5 (S.D.N.Y. 2004). Thus, the Court "need only determine the more fundamental question of whether there are items to be confused in the first place--that is, whether the items at issue here are, in fact, counterfeit, and whether defendant [Snyder] sold those items." *Gucci America, Inc*., 286 F.Supp.2d at 287. In this case, it has not been disputed that the items at issue are counterfeit Marlboro brand cigarettes, and that defendant Snyder sold and distributed these items. *See* Pl. 56.1 Statement at ¶ 29. Accordingly, defendant Synder's actions caused a likelihood of consumer confusion, and plaintiff has established liability under Sections 32 and 43(a) of the Lanham Act. *See Phillip Morris Inc. v. Felizardo,* 2004 WL at *5.

## *Section 42*

Section 42 of the Lanham Act, 15 U.S.C. § 1124, provides in relevant part that "no article of imported merchandise...which shall copy or simulate a trademark registered in accordance with the provisions of this chapter...shall be admitted entry at any customhouse of the United States." The Second Circuit has explained that 15 U.S.C. § 1124 "applies only to merchandise bearing counterfeit or spurious trademarks that copy or simulate genuine trademarks." *Olympus Corp. v. U.S.,* 792 F.2d 315, 322 (2d.Cir. 1986), *cert. denied,* 486 U.S. 1042 (1988);

*Disenos Articos E Industriales, S.A. v. Work,* 676 F.Supp. 1254,

1271 (E.D.N.Y. 1987). In this case, it has not been disputed

that defendant Snyder, together with others, imported at least

five separate shipments of cigarettes from China bearing

counterfeit Marlboro marks.[10] Accordingly, plaintiff has

established defendant Snyder's liability under Section 42 of the

Lanham Act.[11]

## Injunctive Relief

Plaintiff seeks to permanently enjoin defendant Snyder

from future trademark infringement.[12] Section 34(a) of the

Lanham Act provides courts with the "power to grant injunctions

according to the principles of equity and upon such terms as the

Court may deem reasonable, to prevent the violation of any right

of the registrant of a mark registered in the Patent and

---

[10] I should note that in this case, defendant Snyder has not argued nor do plaintiff's submissions indicate that the cigarettes imported by defendant Snyder and his co-conspirators were genuine Marlboro cigarettes bearing a genuine trademark. The importation of genuine goods, unlike counterfeit goods, is not actionable under the Lanham Act. *Olympus Corp.,* 792 F.2d at 321-22.

[11] While plaintiff moves for summary judgment on this claim, plaintiff does not brief this issue in its supporting memorandum, apart from stating that "the same facts that support Phillip Morris USA's First and Second Claims also establish Plaintiff's Fifth claim for violation of Section 42 of the Lanham Act, 15 U.S.C. § 1124." (Pl. Summary Judgment Memo at 1).

[12] Specifically, plaintiff seeks to permanently enjoin defendant Snyder from the following: (1) importing, distributing, purchasing, selling, offering for sale, or otherwise using in commerce any counterfeit Philip Morris USA branded cigarettes; (2) aiding or abetting others in the importation, distribution, purchase, sale, or offering for sale or other use in commerce of any Philip Morris USA branded cigarettes; and (3) engaging in any other activity constituting infringement of Phillip Morris USA's rights in any Phillip Morris USA trademarks, including without limitation the Marlboro Marks. (*See* Pl. Summary Judgment Memo at 12).

Trademark Office." 15 U.S.C. § 1116(a). To obtain a permanent injunction, plaintiff must demonstrate (1) actual success on the merits and (2) irreparable harm. *See e.g., Gucci America, Inc.,* 286 F.Supp.2d at 290; *Wojnarowicz v. American Family Ass'n,* 745 F.Supp. 130, 148, n.13 (S.D.N.Y. 1990). As previously discussed, plaintiff has established success on the merits on its Lanham Act claims. Moreover, in this Circuit, "proof of a likelihood of confusion establishes both likelihood of success on the merits and irreparable harm." *Brennan's Inc. v. Bennan's Rest.,* 360 F.3d 125, 29 (2d Cir.2004); *Genesee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997). Accordingly, plaintiff is entitled to a permanent injunction enjoining defendant Snyder from further infringement of plaintiff's trademarks. *See e.g., Phillip Morris v. Felizardo,* 2004 WL at *7; *Gucci America, Inc.,* 286 F.Supp.2d at 290.

## Damages

Plaintiff seeks statutory damages rather than actual damages for defendant Snyder's infringement. Plaintiff argues that it is entitled to recover $4 million in statutory damages based on defendant Snyder's willful use of counterfeit versions of four registered Marlboro Marks. Section 35(c) of the Lanham Act provides that:

> [i]n a case involving the use of a counterfeit mark...in connection with the sale, offering for sale, or distribution of good or services, the plaintiff may elect, at any time

before final judgment is rendered by the trial court, to recover, instead of actual damages and profits..., an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services...

15 U.S.C. § 1117(c). Congress added the statutory damages provision of the Lanham Act in 1995 because "counterfeiters' records are frequently nonexistent...making proving actual damages in these cases extremely difficult, if not impossible." *See Gucci America, Inc.,* 315 F.Supp.2d at 520. A plaintiff may recover "not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold..." 15 U.S.C. § 1117 (c)(1). If the Court finds that "the use of the counterfeit mark was willful," then the plaintiff may recover "not more than $1,000,000 per counterfeit mark..." *Id.* at 1117(c)(2). "The standard for willfulness is whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Kepner Tregoe, Inc. v. Vroom,* 186 F.3d 283, 299 (2d Cir. 1999).

District courts have wide discretion in awarding statutory damages. *See Cable/Home Communication Corp. v. Network Prod., Inc.,* 902 F.2d 829, 852 (11th Cir.1990). Although Section 1117(c) "does not provide guidelines for courts to use" in determining an appropriate statutory damage award, "many courts have found guidance in the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides for

statutory damages for willful infringement." *Gucci America*, 315
F.Supp.2d at 520; *Sara Lee Corp. v. Bags of New York, Inc.,* 36
F.Supp.2d 161, 165-67 (S.D.N.Y. 1999); *Rodgers v. Anderson,* 2005
WL 950021, at *2 (S.D.N.Y. 2005).  Using Copyright Act caselaw as
a guide, courts have considered the following factors in setting
statutory damage awards under the Lanham Act: defendant's profits
from infringement, the defendant's wilfulness, the size of
defendant's counterfeiting operation, defendant's efforts to
mislead and conceal, "the deterrent effect on others besides the
defendant...and the potential for discouraging the defendant."
*Sara Lee Corp.,* 36 F.Supp.2d at 166.

        In this case, I find that defendant Snyder's conduct
was willful.  Defendant Snyder recently pled guilty to knowingly
and intentionally conspiring to traffic counterfeit cigarettes.
(Johnson Decl. Ex. D).  Moreover, defendant's counterfeiting
operating was large, involving at least 200,000 cartons and
millions of cigarettes.  (Johnson Decl. Ex. B, Criminal Compl. at
3).  The government, using a conservative retail price of $23.50
per carton, estimated the total value of the five infringing
shipments to be $4,773,790.  (Johnson Decl. Ex. I at 7).  Given
the evidence of willfulness, demonstrated by defendant Snyder's
own admissions, the size of the potential profit, the large
quantities of cigarettes involved, and the need for a substantial
deterrent to future misconduct by Snyder and other similarly

situated counterfeit cigarette traffickers, I find that the maximum statutory award is warranted. *See e.g. Phillip Morris USA, Inc. v. Castworld Products, Inc.,* 219 F.R.D. 494, 501-02 (C.D.Cal. 2003)(awarding maximum statutory award of $2 million for the infringement of two trademarks where the defendant "import[ed] 8,000,000 counterfeit cigarettes, having a street value of millions of dollars."); *Phillip Morris USA, Inc. v. David Banh, et.al.,* CV-03-4043 (GAF)(C.D.Cal. 2005)(awarding maximum statutory award); *Phillip Morris USA, Inc. v. Sheng Chen Lin,* CV-03-08923 (CAS)(C.D.Cal. 2004)(same); *Gucci America, Inc.,* 315 F.Supp.2d at 520-21 (awarding $2 million in statutory damages for use of two counterfeit marks). The counterfeit cigarettes imported and sold by defendant Snyder and his co-conspirators infringed upon four of plaintiff's registered and valid trademarks: the Marlboro® brand trademark (i.e. the word "Marlboro"), the Marlboro Roof Design Label® mark (i.e. the red and gold pentagonal label), the Marlboro Lights® brand trademark (i.e. the phrase "Marlboro Lights"), and the Marlboro Lights Roof Design Label® mark (i.e. the gold pentagonal label). (*See* Supplemental Decl. of Samuel Barkin ¶¶ 3-4; Newman Aff. Ex. 1).[13]

---

[13] Plaintiff's original submissions did not provide sufficient evidence of the number of counterfeit marks used by defendant Snyder and his co-conspirators. During oral argument held on July 21, 2005, the Court advised plaintiff to provide additional evidence on the issue. Plaintiff subsequently provided an affidavit from Assistant United States Attorney Debra D. Newman, the attorney assigned to the criminal proceedings against defendant Snyder and his co-conspirators, dated August 2, 2005 ("Newman Aff."), accompanied by two sample counterfeit cigarette packs that were seized by customs officials. The

Accordingly, plaintiff is entitled to a maximum statutory award of $4,000,000.

### Motion for Default Judgment, Damages and Injunctive Relief

<u>Default Judgment</u>

Plaintiff also moves for an entry of default judgment against defendants Berardelli, Deland, Farnham, Kennedy, and Doctor pursuant to Fed. R. Civ. P. 55(b). Pursuant to Fed. R. Civ. P. 55(b), a Court may enter a default judgment against a party who "has failed to plead or otherwise defend" an action, and this constitutes a final judgment in the action.[14] *Id.* at 325. The Second Circuit has noted that default judgments are "left to the sound discretion of the district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron Oil,* 10 F.3d at 95. An entry of default judgment should be made only where there was willful default, involving more than a failure to answer as a result of negligence

---

sample packs were packaged to look like genuine Marlboro and Marlboro Lights cigarette packs, and contain counterfeit versions of the four trademarks discussed above. (Newman Aff. Ex. 1).

[14] Fed. R. Civ. P. 55(a) provides that a "clerk may enter a default upon being advised by affidavit or otherwise that a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993). Unlike a court's entry of default judgment pursuant to Fed. R. Civ. P. 55(b), a clerk's "default notation is an interlocutory action; it is not itself a [final] judgment." *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.,* 782 F.2d 329, 335 (2d Cir. 1986).

or carelessness. *See SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998).

In this case, defendants Berardelli, Deland, Farnham, Kennedy, and Doctor have failed to file an answer or otherwise respond to the complaint, which was filed by plaintiff in March 2003, or to respond to plaintiff's application for default judgment.[15]  Having failed to provide any explanation for their failure to defend, I find that these defendants have defaulted willfully.  *See Cablevision Systems New York City Corporation v. Leach,* 2002 WL 1751343, at *2 (S.D.N.Y. 2002)(default willful where defendant never responded to the complaint, appeared, or explained default).  Plaintiff has documented service of its complaint and of its motion papers.  There is no indication that requiring plaintiff to take further steps prior to a determination on the merits would be effective in eliciting a response.  *See id.*  Accordingly, an entry of default judgment is appropriate.

<u>Damages and Injunctive Relief</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is

---

[15] In a letter to the Court, plaintiff's attorney Samuel Barkin stated that he had "receive[d] a request from defaulting defendant Timothy Farnham for a 3 week extension of time to respond to Phillip Morris's default judgment against him."  As a result of that letter, oral argument on this motion was continued from June 6 to July 21, 2005.  However, since that last communication, Farham has not filed any response to the default judgment motion.

not considered an admission of damages." *See Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.1992), *cert. denied,* 113 S.Ct. 1049 (1993). A plaintiff must substantiate a claim with evidence to prove the extent of damages. Although an evidentiary hearing may be held, "it is not necessary for the district court to hold a hearing, as long as...there was a basis for the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997); *Tamarin v, Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993)(district judges are given much discretion to determine whether an inquest need be held).

In this case, plaintiff seeks a permanent injunction against all defaulting defendants enjoining them from future distribution and sale of counterfeit Marlboro brand cigarettes. As previously discussed, Section 34(a) of the Lanham Act gives courts the "power to grant injunctions...to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). Given the risk of irreparable harm caused by default defendants' continued sale of counterfeit Marlboro brand cigarettes, I find that permanent injunctive relief is warranted. *See Phillip Morris, USA v. Castworld Products, Inc.,* 219 F.R.D. 494, 502 (C.D.Cal.2003) ("failure to grant injunction would needlessly expose Plaintiff

to the risk of continuing irreparable harm").

Plaintiff also seeks statutory damages against three of the defaulting defendants, Berardelli, Deland and Farnham,[16] jointly and severally, in the amount of $4 million, based on their willful use of counterfeit versions of four Marlboro Marks. (*See* Pl. Default Judgment Memo at 2, 9). Plaintiff submits evidence that these defendants, along with defendant Snyder and others, imported counterfeit cigarettes that infringed upon four registered Marlboro Marks: the Marlboro® brand trademark (i.e. the word "Marlboro"), the Marlboro Roof Design Label® mark (i.e. the red and gold pentagonal label), the Marlboro Lights® brand trademark (i.e. the phrase "Marlboro Lights"), and the Marlboro Lights Roof Design Label® mark (i.e. the gold pentagonal label). (*See* Supplemental Decl. of Samuel Barkin ¶¶ 3-4; Newman Aff. Ex. 1). As previously discussed, under 15 U.S.C. § 1117(c) a plaintiff may elect to pursue statutory rather than actual damages. "Several courts have found statutory damages especially appropriate in default judgment cases due to infringer nondisclosure." *PetMed Express, Inc. V, MedPets.Com, Inc.,* 336 F.Supp.2d 1213, 1219 (S.D.Fla. 2004)(citing *Sara Lee Corp.,* 36 F.Supp.2d at 165). Here, given the willfulness of Berardelli, Deland and Farnham who each pled guilty to knowingly trafficking

---

[16] Plaintiff does not seek any damages against defendants Doctor and Kennedy, the two defendants who were not criminally prosecuted. (*See* Pl. Default Judgment Memo at 10, n.8).

counterfeit cigarettes, the size of the potential profit given the large quantities of cigarettes involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit cigarette traffickers, I find that plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)--$4,000,000 or $1,000,000 per counterfeit mark. *See e.g. Phillip Morris USA, Inc. v. Castworld Products, Inc.,* 219 F.R.D. at 501-02 (C.D.Cal. 2003)(awarding maximum statutory award of $2 million for the infringement of two trademarks where the defendant "import[ed] 8,000,000 counterfeit cigarettes, having a street value of millions of dollars"); *Phillip Morris USA, Inc. v. Glenda Patton,* CV-03-2569 (GAF)(C.D.Cal.2003) (granting default judgment and awarding plaintiff maximum statutory damages in the amount of $4 million).

### CONCLUSION

For the reasons set forth above, (1) plaintiff's motion for partial summary judgment against defendant Snyder on Claims 1,2, 5, and 7 alleged in the complaint is granted; (2) plaintiff's motion for an entry of default judgment against defendants Berardelli, Deland, Farnham, Kennedy, and Doctor pursuant to Fed. R. Civ. P. 55(b) is granted; (3) defendants Snyder, Berardelli, Deland, Farnham, Kennedy, and Doctor are permanently enjoined from future infringement of plaintiff's trademarks; and (4) plaintiff is awarded $4 million in statutory

damages, for which defendants Snyder, Berardelli, Deland, and Farnham are liable, jointly and severally.

Plaintiff is directed to settle a final judgment on notice in accordance with this opinion and its undertaking to discontinue claims not made the subject of the motion. The Clerk is directed to furnish a filed copy of the within to all parties and to the Magistrate.

SO ORDERED.

Dated :   Brooklyn, New York
          August 26, 2005


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge